JOHN FLAHERTY, an Infant, by DELIA FLAHERTY, his Guardian ad Litem, et al., Appellants, v. STATE OF NEW YORK, Respondent. (Claim No. 26139.)

Third Department, November 14, 1945.

*Esther R. Brause,* attorney (*Leonard Acker* of counsel), for appellants.

*Nathaniel L. Goldstein, Attorney-General* (*Orrin G. Judd, Solicitor-General* and *Mortimer H. Michaels, Assistant Attorney-General,* of counsel), for respondent.

LAWRENCE, J. The infant claimant was admitted to the New York State Training School for Boys at Warwick, N. Y., in September, 1939. At that time he was fifteen years of age. For the first two weeks he was given various tests to determine his capacity and for other purposes. At the end of that time he was

assigned to Cottage C-3. That cottage was in charge of a Mr. Holden, designated as a cottage master, and Mrs. Holden, designated as a cottage mother. This cottage contained a recreation room, some individual sleeping rooms for boys, a hallway and a dormitory with twenty beds. There were ten beds on each side of the dormitory. Each boy had a separate bed. Another boy, named Sarrentino was also assigned to Cottage C-3 about the same time as the infant claimant. These boys slept in the dormitory. The cottage master was present any time the boys were in the dormitory except when they were asleep. The cottage master and the cottage mother occupied living quarters upstairs in the cottage, which were so arranged that they were able to look down into the dormitory while the boys slept. Dim lights were kept burning in the dormitory at night. Mr. and Mrs. Holden slept in their quarters every night. This was in accordance with the practice followed by cottage couples in all the cottages. A night watchman was on duty from 9:00 P.M. until 6:00 A.M. This night watchman went on duty after the boys had gone to bed. His duties consisted of watching about the grounds and checking up inside the cottages once an hour.

About a week before March 2, 1940, Mr. and Mrs. Holden went on a vacation. Mr. and Mrs. James acted in their stead. It was within the knowledge of the superintendent that, during vacations of the regular cottage parents, there was likely to be trouble among the boys and attempts to " try out " the substituted cottage parents. Mr. and Mrs. James did not live in or remain in the cottage during the night and the boys had no supervision during the night while Mr. and Mrs. Holden were away on vacation. Disturbances occurred at night while the regular cottage parents were away.

Ill feeling developed between Flaherty and Sarrentino which led to quarreling. Sarrentino dared Flaherty to fight. In such cases of quarreling the school authorities permitted the boys to settle their differences with boxing gloves. The school chaplain supervised the contests. Sarrentino and Flaherty made arrangements for a fight on Friday two days before the assault to be referred to later. Sarrentino appeared and gave as an excuse for not proceeding with the contest that he had to do some work. Another appointment was made for the next afternoon but Sarrentino did not appear. This was to be held at the chapel under the supervision of the chaplain. Flaherty told Mr. James of the expected fight. Later that afternoon Flaherty told Mr. James that he had discovered a burned hole in

his pillow. Nothing was done about it by Mr. James. Later Sarrentino admitted that he put acid on the pillow.

On two occasions Sarrentino had been disciplined by the school authorities. The school record of his conduct was not admitted in evidence because it was claimed that such record was confidential and an expression of opinion only.

A soda acid fire extinguisher was kept in an unlocked cabinet on the wall of the hallway in the cottage. The acid could be taken from it by removing a cap. During the time Mr. and Mrs. James were in charge the boys were allowed in the hallway without supervision. This was not permitted during the time the regular cottage parents were in charge. Acid was removed from this fire extinguisher by Sarrentino during Saturday afternoon, March 2, 1940. About 1:30 A.M., on the Sunday morning following Flaherty was awakened with a feeling of severe pain and burning. His screams awakened the other boys in the dormitory and the night watchman, who was at another cottage, was called. He discovered that Flaherty had been burned and that his pillow was burned " right in half." Flaherty was taken to the hospital. He suffered third degree burns and remained in the hospital seven months. Permanent scars and bald spots on the head resulted from the burns. Sarrentino admitted that he got the acid from the fire extinguisher and poured it on Flaherty.

Respondent urges that the State cannot be deemed an insurer of the safety of inmates and that the supervision given to the inmates at Warwick State Training School was adequate and according to accepted standards. With this we cannot agree. The authorities at the institution had notice of an ill feeling between Sarrentino and Flaherty and that someone had tried to injure Flaherty on the day before he was injured. For some time just prior to the assault there had been a laxity of supervision. The authorities also had notice of the character of Sarrentino and that a dangerous substance was contained in the fire extinguisher, to which Sarrentino had access.

Boys sent to this school are children in need of guidance. The school is under the supervision of the Department of Social Welfare. Both Flaherty and Sarrentino became wards of the State and inmates of the school for the purpose of supervision and guidance. Neglect of the school authorities to protect them adequately is negligence. Care must be sufficient to prevent consequences which might be anticipated. The school authorities failed in their duty to the infant claimant.

The judgment should be reversed on the law and facts, and judgment granted in the sum of $10,000.

All concur.

Judgment reversed on the law and facts, and judgment granted in the sum of $10,000.

The court disapproves of and reverses Findings of Fact numbered 9, 15, 17, 23 and 24, and Conclusions of Law numbered II, III and IV, and substitutes therefor the following Findings of Fact and Conclusions of Law:

### Findings of Fact.

1. That the school authorities had notice of the ill feeling between Sarrentino and Flaherty and that some one had tried to injure Flaherty on the day before he was injured.

2. That for some time prior to the assault there had been a laxity of supervision.

3. That the school authorities had notice of the quarrelsome and undisciplined character of Sarrentino.

4. That the school authorities had notice that a dangerous substance was contained in the fire extinguisher to which Sarrentino had access.

5. That the school authorities did not adequately protect the infant claimant from dangers which should have been anticipated.

6. That, as a result of such failure, the State became liable in negligence for injuries sustained by the infant claimant in the sum of $10,000.

### Conclusions of Law.

II. That the State of New York and its officers and employees were guilty of negligence.

III. That claimants were free from negligence.

IV. That claimants have established a cause of action against the State and in favor of the infant claimant.

V. That the infant claimant has sustained injuries as a result of the negligence of the employees and officers of the State and without any negligence on the part of the infant claimant in the sum of $10,000.

VI. That judgment should be entered accordingly.